**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
21031 Ventura Boulevard, Suite #340
Woodland Hills, CA 91364-6522
Telephone: (323) 306-4234
Facsimile: (866) 633-0228
**[Other Counsel on Signature Page]**

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **NATALIE ESTES**, *on behalf of herself and all others similarly situated*, <br><br> *Plaintiff,* <br><br> v. <br><br> **NATIONWIDE MEDICAL, INC.,** <br><br> *Defendant*. | Case No.: <br><br> **COMPLAINT - CLASS ACTION** <br><br> **ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This action arises out of the marketing practices of Defendant, Nationwide Medical, Inc. ("Defendant" or "Nationwide") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.     Defendant sends telemarketing text messages soliciting the purchase of Defendant's medical supplies.

1

3. Defendant sends these telemarketing text messages to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

4. Defendant continues to send text messages even after it receives multiple requests from the called party requesting that Defendant stop sending its text messages.

5. The TCPA prohibits the sending of telemarketing text messages to individuals on the National Do-Not-Call Registry and to individuals that have requested no further messages.

6. Accordingly, Ms. Estes brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. This Court has jurisdiction over Defendant because Defendant is headquartered in this District, conducts business transactions in this District and has committed tortious acts in/from this District.

9. Venue is proper in this District because Defendant resides within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## PARTIES

10. Plaintiff Natalie Estes ("Ms. Estes" or "Plaintiff") is, and at all times

mentioned herein was, a resident of Williamsburg, Virginia.

11.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12.    Defendant is, and at all times mentioned herein was, a Nevada corporation headquartered at 5230 Las Virgenes Road, Suite 105, Calabasas, California 91302.

13.    Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

15.    Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

16.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

17.    Specifically, a company may not initiate any "telephone solicitation" to

3

a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

18.    Under the TCPA, a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. . . ." 47 U.S.C.§ 227(a)(4); *see also* 47 C.F.R. § 64.1200(f)(15).

19.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20.    The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

22.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992)

("TCPA Implementation Order").

23.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures.

---

[1]    The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental

47 C.F.R. § 64.1200(d).

28.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

29.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30.     These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

31.     Though some of these requirements mention "residential" telephones,

---

of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

they were all extended to cover calls to cellular telephones that are used for residential

purposes. 47 C.F.R. § 64.1200(e).

32.    Further, a person or entity can be liable for calls made on its behalf in

violation of the TCPA, even if that person or entity did not directly dial such calls.

*See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶

13 (1995) (explaining that the FCC's "rules generally establish that the party on

whose behalf a solicitation is made bears ultimate responsibility for any [TCPA]

violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling

clarifying that sellers "may be held vicariously liable under federal common law

principles of agency for TCPA violations committed by third-party telemarketers . .

. under a broad range of agency principles, including not only formal agency, but also

principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH

Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd.

6574, 6584 ¶28 (2013).

33.    Accordingly, an entity can be liable under the TCPA for a prohibited

call made on its behalf under a number of theories including vicarious liability.

Under those circumstances, the seller is properly deemed to have initiated the call

through the person or entity that actually placed the call.

34.    Finally, text messages, such as the ones sent by Defendant, are subject

to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm.,

Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection:*

*Text Message Senders Must Comply With the Telephone Consumer Protection Act*
(Nov. 18, 2016).

35.    A caller may send a telephone solicitation to any person with whom the
caller has an established business relationship. *See* 47 C.F.R. § 64.1200(f)(15).

36.    An "established business relationship" is defined as "a prior or existing
relationship formed by a voluntary two-way communication between a person or
entity and a residential subscriber with or without an exchange of consideration, on
the basis of the subscriber's purchase or transaction with the entity within the eighteen
(18) months immediately preceding the date of the telephone call or on the basis of
the subscriber's inquiry or application regarding products or services offered by the
entity within the three months immediately preceding the date of the call, which
relationship has not been previously terminated by either party."    47 C.F.R. §
64.1200(f)(5).

37.    A caller may not make a telephone solicitation after the expiration of the
established business relationship, i.e., 18 months after a purchase or transaction or
three months after an inquiry or application. *See id.*

38.    A "do not call" or "STOP" request terminates an established business
relationship for purposes of telemarketing and telephone solicitation even if the
subscriber continues to do business with the seller. 47 C.F.R. § 64.1200(f)(5)(i).

## **FACTUAL ALLEGATIONS**

39.    Ms. Estes is the user of a cellular telephone number ending in 9626.

8

40.    Ms. Estes' cellular telephone number ending in 9626 is used for residential purposes and is not associated with a business.

41.    Ms. Estes' cellular telephone number ending in 9626 has been on the National Do-Not-Call Registry since August 17, 2018.

42.    Defendant sent Ms. Estes multiple unsolicited text messages soliciting Defendant's products.

43.    Defendant's text messages related to Defendant's medical supplies.

44.    Defendant's text messages included a link that, when clicked, directs a consumer's browser to Defendant's website where a consumer can order medical supplies.

45.    Defendant continued texting Ms. Estes even after she requested that Defendant stop sending her text messages.

46.    For example, as shown below, on August 27, 2024 at 6:35pm, Defendant sent Ms. Estes a text message for telemarketing purposes that included a link to Defendant's website, encouraging her to order medical supplies:

1
2
3
4
5
6
7
8
9
10
11
12



13
14

47.    Ms. Estes responded "STOP" and received a message that stated, "You

15    are unsubscribed from Nationwide Medical medical supplies alerts.  No more

16    messages will be sent.  Reply HELP for help or call 877.307.2727."

17

18    48.    Despite this, as shown above, Ms. Estes received another message from

19    Defendant on September 20, 2024 at 2:40pm.

20    49.    As shown below, she again responded "STOP" and received another

21    message advising her that the messages would cease:

22
23
24
25
26
27
28

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    50.    Despite this, as shown above, she received additional messages on

20  October 8, 2024 at 2:26pm and October 15, 2024 at 2:55pm.

21

22    51.    On October 22, 2024 at 2:45pm, Ms. Estes received another message

23  from Defendant:

24
25
26
27
28

52.     Ms. Estes responded "STOP" again but continued to receive multiple text messages, including on October 29, 2024 as shown above.

53.     All of these messages came from short code telephone number 91898.

54.     The telephone number included in the text messages (i.e., 877.307.2727) is the telephone number displayed on Defendant's website (i.e., https://www.nationwidemedical.com).

55.     Ms. Estes continues to receive text messages despite her efforts to have the text messages stop.

56.     Ms. Estes did not provide her consent to receive these text messages.

57.     To the extent Defendant had any consent to send these text messages, Ms. Estes revoked such consent as shown above, multiple times.

58.     Defendant's records or the records of third parties will reveal all of the text messages Defendant sent to Ms. Estes.

59.     Despite Ms. Estes' requests, Defendant continued to text Ms. Estes.

60.     Defendant or those otherwise sending text messages on Defendant's behalf, did not have written do-not-call policies or procedures at the time of the texts to Ms. Estes and the classes defined below.  Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued text messages to Ms. Estes after she directly asked not to be contacted.

61.     Defendant's violations were negligent.

62.     Alternatively, Defendant's violations were willful and knowing.

63.     Ms. Estes and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages.  The text messages were annoying and a nuisance, and wasted the time of Ms. Estes and the class

members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

64.    Defendant uses automated systems to send text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

65.    Defendant, made two or more telephone solicitations to Ms. Estes, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

66.    Defendant did not have an established business relationship with Ms. Estes at the time Defendant sent its text messages to Ms. Estes.

67.    To the extent Defendant had consent to send text messages to Ms. Estes, Ms. Estes revoked that consent – and continued to receive unwanted text messages.

68.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Estes is entitled to $500 per text through 47 U.S.C. § 227(c).

69.    Ms. Estes is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

70.    Defendant sent two or more telemarketing texts to Ms. Estes despite not having in place the required policies and procedures prior to sending such messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

71.    Defendant sent one or more telemarketing texts to Ms. Estes after Ms.
Estes explicitly requested that the text messages stop.

72.    Defendant failed to record and/or honor Ms. Estes' do-not-call request.

73.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Estes is
entitled to an additional $500 per call through 47 U.S.C. § 227(c).

74.    Ms. Estes is entitled to an additional $1,500 per call if Defendant's
actions are found to be knowing or willful.

## **CLASS ACTION ALLEGATIONS**

75.    Ms. Estes brings this action under Fed. R. Civ. P. 23 on behalf of the
following "Classes," defined as follows:

Registry Class:  Plaintiff and all persons within the United
States to whose telephone number Defendant placed (or
had placed on its behalf) two or more telemarketing text
messages in a 12-month period when the telephone
number to which the text messages were sent was on the
National Do-Not-Call Registry for more than 30 days at
the time of the text messages, from four years prior to the
filing of the Complaint through class certification.

IDNC Class: Plaintiff and all persons in the United States
to whom more than one text message was sent for the
purpose of encouraging the purchase of Defendant's goods
in any 12-month period since the date four years prior to
the filing of this action, to a residential telephone number,
where Defendant's records reflect that the number
previously sent an inbound "STOP" message or its
equivalent, at the time of at least one such text message.

(The Registry Class and IDNC Class are collectively referred to herein as the
"Classes").

15

76.    Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

77.    The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

78.    The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a.    The time period(s) during which Defendant sent its text messages;

b.    The telephone numbers to which Defendant sent its text messages;

c.    The telephone numbers for which Defendant had prior express written consent;

d.    The telephone numbers that replied to Defendant's text messages with a message communicating a desire that Defendant stop sending text messages;

e.    The purposes of such text messages; and

f.    The names and addresses of Class members.

79.    Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

80.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

a.    Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

b.    Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c.    Whether Defendant or the entity with which it contracts sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

d.    Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

e.    Whether Defendant honors do-not-call requests;

f.    Whether Defendant's statutory violations were willful and knowing; and

g.    Whether Defendant should be enjoined from engaging in such conduct in the future.

81.    Plaintiff is a member of the Classes in that Defendant sent two or more text messages to Plaintiff for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry

17

82.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

83.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted text messages and suffered a nuisance and an invasion of their privacy.

84.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

85.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

86.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

87.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

88.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

89.    Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

90.     Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-90 as if fully set forth herein.

91.     Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff's and putative class members' telephone numbers.

92.     Plaintiff's and putative class members' telephone numbers were all on the National Do-Not-Call Registry at the time of the text messages.

93.     Plaintiff and putative class members each received two or more such text messages in a 12-month period.

94.     Plaintiff and putative class members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

95.     Plaintiff and putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the IDNC Class)**

96.     Plaintiff and the proposed IDNC Class and subclass incorporate the allegations of paragraphs 1-90 as if fully set forth herein.

97.     The TCPA requires any party that is engaged in telemarketing institute and maintain a written internal do-not-call policy. 47 C.F.R. § 64.1200(d).

98.     Defendant violated the TCPA by not having sufficient internal DNC policies, by not following or honoring any policies that it did have, and/or by not sufficiently ensuring that those making calls on its behalf did the same—including by failing to actually honor do-not-call requests or their equivalent made by Plaintiff and other members of the IDNC Class and subclass.

99.     Plaintiff and the class members received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

100.    As a result of these violations, Plaintiff and the class were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy.

101.    Plaintiff and putative class members are entitled to an award of $500 in statutory damages for each telephone solicitation text pursuant to 47 U.S.C. § 227(c)(5).

102.    Plaintiff and putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation text made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays

for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff

as the representatives of the Classes and appointing her counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate

the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to

protect the interests of the Classes, including, *inter alia*, an order prohibiting

Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages; and

F.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: November 11, 2024   Respectfully Submitted,

By: **/s/ Todd M. Friedman**
Todd M. Friedman
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

/s/ Max S. Morgan, Esquire*
Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
(*pro hac vice application forthcoming)